JONATHAN CLARK & SONS CO. v. CITY OF PITTSBURGH.

(Circuit Court, W. D. Pennsylvania. May 21, 1906. Amendment to Opinion June 11, 1906.)

1. CONTRACTS—BUILDING PUBLIC WORK—ACTION TO RECOVER CONTRACT PRICE.

A contract for a public work for a city which gave the city the right to stop the work of the contractor if at any time in the opinion of the director of public works he was not complying with the contract, and to complete the work and charge the cost to the contractor, construed, and a provision, requiring the contractor to obtain a final certificate from such director of the completion of the work in accordance with the contract before being entitled to final payment, *held* not applicable where such right was exercised and the work completed by the city, and the obtaining of such certificate not a condition precedent to an action by the contractor to recover from the city an alleged balance due him under the contract.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 1308.]

2. SAME.

A contract with a city for the construction of a reservoir gave the city the right, if in the opinion of the director of public works there was undue delay in the work or a failure to comply with the contract in good faith, to stop the work of the contractor and complete the work at his expense; the contractor to be entitled to any excess of the amount due him under the contract above the cost of such completion, and liable for any deficiency. It also contained a provision that any dispute arising between the parties under the contract should be submitted to the director of public works as arbitrator, whose decision should be final and conclusive. *Held*, that the exercise by such director of the right given him to stop the work of the contractor and the completion of the work by the city was a waiver of the arbitration clause, and that the contractor could not be required to submit the question of the amount due him after the work was completed to the director as arbitrator, but was entitled to maintain an action in the courts therefor.

3. SAME—BURDEN OF PROOF.

In such an action the burden does not rest upon the contractor to show the cost of the work done by the city in completing the contract, there being no presumption that such cost exceeded the prices specifically fixed by the contract for the work so done, and being, moreover, peculiarly within the knowledge of the defendant, any excess of cost is a matter of affirmative defense.

Pursuant to a stipulation in writing, this case was tried by the court without the intervention of a jury.

Breck & Vaill, for plaintiff.

Clarence Burleigh and A. M. Thompson, for defendant.

ACHESON, Circuit Judge. On the 13th day of May, 1897, a written contract was entered into between the city of Pittsburgh (the defendant) as party of the first part, through Edward M. Bigelow, director of the department of public works of said city, and Jonathan Clark & Sons Company (the plaintiff), as party of the second part, whereby the plaintiff agreed to furnish the materials, labor, tools, and appliances for, and to construct for, the defendant, a reservoir in Highland Park, in said city, in conformity with the specified requirements and conditions.

The contract contained the following provision lettered section J:

"The party of the second part further agrees that if at any time the director shall be of the opinion that the said work, or any part thereof, is unnecessarily delayed, or that the said contractor is willfully violating any of the conditions or covenants of this agreement, or is executing the same in bad faith, he shall have the power to notify the contractor to discontinue all work under this contract, or any part thereof, and thereupon the contractor shall cease said work, or such part thereof, and the director shall thereupon have the power to place such and as many persons as he may deem necessary, the same to be employed by contract or otherwise, to work at and complete the work herein described, or any part thereof, and to use such material as he may find upon the site of said work or to procure other materials for the completion of the same, and to charge the expense of said labor and materials to the aforesaid contractor, and the expense so charged shall be deducted from and paid by the party of the second part out of such moneys as may then be due, or may at any time thereafter become due to the said party of the second part, under and by virtue of this agreement; and in case such expense is less than the sum which would have been payable under this contract, if the same had been satisfactorily completed by the said party of the second part, then, and in that event, the said party of the second part shall be entitled to receive the difference; but in case such expense shall exceed the said last sum, then, and in that event, the said party of the second part, his sureties and heirs and assigns, shall pay the amount of such excess to the party of the first part on notice from said director of the excess due."

The plaintiff entered upon the execution of the work under the contract and proceeded therewith until April 16, 1900, when the said director, acting on behalf of the city, by letter, notified the plaintiff that in his (the director's) opinion the work provided for in the contract "has been and is unnecessarily delayed, and that you have willfully violated various of the conditions and covenants in said contract, and that you have executed the contract in bad faith. And therefore I do hereby exercise the power in me vested and notify you from this date to discontinue all work under said contract. And I hereby notify you that I shall, as authorized by said contract, have completed the work therein described, and that, in case the expense of said completion shall exceed the sum which would have been payable under the contract had you faithfully kept and performed the same, I shall require you and your sureties to pay the amount of such excess to the city of Pittsburgh." In pursuance of the foregoing noti-

fication, the city, acting by the director, forthwith put the plaintiff off the work then uncompleted, and subsequently employed the Mercantile Trust Company to complete the work. From that time the plaintiff was not permitted by the city to do, and did not do, any more of the work.

Under the proofs in this case, I think the director was not justified upon the facts in the opinion stated in his letter of dismissal. Entertaining, however, as he did, the opinion thus expressed by him, he had a right, under the above-quoted terms of the contract, to notify the plaintiff to discontinue the work, and the city had a right to have the work completed by another in accordance with the terms of the above-quoted section J of the contract.

This suit (as finally submitted) is for the recovery by the plaintiff from the defendant of the alleged balance for materials furnished and used and work and labor done by the plaintiff in the construction of this reservoir. The defendant sets up in bar of the action two provisions of the contract, which may be designated as the "final estimate provision" and the "arbitration clause." The former, having to do with the final estimate, is as follows:

"(V) And whenever, in the opinion of the director, the party of the second part shall have completed the reservoir and its appurtenances, ready to be put into service, then the director shall, with all reasonable diligence, cause a final estimate to be made from actual measurements, giving the whole amount of work done by the party of the second part, and the value thereof under and according to the terms of this contract. The party of the first part will then, within thirty (30) days after the said final estimate, pay to the party of the second part the remainder which shall be found to be due, excepting therefrom five (5) per cent. to be retained as below stipulated, and such other sum or sums as may be lawfully retained under any of the provisions of this contract: provided that nothing herein contained shall be construed to affect the right hereby reserved to reject the whole or any portion of the aforesaid work, should the final estimate be found to be inconsistent with the terms of this agreement, or otherwise improperly given.

"(W) Twelve (12) months after the reservoir and its appurtenances have been completed and put into service, as above stipulated, the director will make a final examination of the whole work; and, if he shall find that the party of the second part shall have fully and faithfully performed this contract on his part, then he will accept the work and the party of the first part will, within thirty (30) days, pay to the party of the second part the previously retained five (5) per cent. and all other money which shall be found to be due.

"(X) The party of the second part further agrees that he will receive the compensation, as above stipulated, in full for all fees or royalties for patented inventions, and all charges for labor, materials, contrivances or processes used in connection with the work, and that he shall not be entitled to demand or receive payment for the aforesaid work or materials or any part thereof, except in the manner set forth in this agreement, nor unless each and every of the promises, agreements, stipulations, terms and conditions herein contained shall have been performed, kept, observed, and fulfilled on his part, and the director shall have given his certificate to that effect."

These provisions just quoted contemplate and expressly cover the contingency of the completion of the reservoir by the "party of the second part," and they do not in terms apply to, and are inappropriate to, the extraordinary contingency of the said party's being turned off the work and prevented from completing it. The above provisions do not say that when the director is of opinion that the reservoir is

completed, but when he is of opinion that it has been completed by the "party of the second part," the final estimate shall issue. Moreover, section J of the contract, under which the plaintiff was put off the work, completely provides for that contingency, and secures to the plaintiff when thus dispossessed what is justly due it for its materials and work, subject to the specified charges and deductions on account of actual expense incurred by the city. The difference after such deduction the plaintiff is expressly declared entitled to receive. Instead of and wholly without any reference to a final estimate or certificate by the director, provision J stipulates for a distinct method by deductions and charges for fixing the amount due the plaintiff. What is honestly due the plaintiff ought to be paid, and clause J within itself prescribes the principles of ascertaining the indebtedness based upon no mere estimate by the director of the dispossessing party, but based upon facts susceptible of actual proof. A stipulation to prevent the liquidation of that indebtedness by the courts, if sustainable at all, ought to be clear and free from any doubt, and in my judgment such is not the case here. In a word, in this contract two totally different contingencies were clearly provided for: If the party of the second part completed the work, then payment was to be through the medium of a final estimate by the director; but if the city took the work out of the plaintiff's hands, and placed its completion with another, then, while perhaps such completing party might have to secure his final estimate, no such restriction was imposed upon the plaintiff as respects payment of the amount due it. Furthermore, all the time provisions and other provisions in the sections last quoted expressly date from or depend upon the precedent final estimate and hence fall with it so far as respects payment of what is due the plaintiff.

The arbitration clause is in the words following:

"(D) In case any question or dispute shall arise between the party of the second part hereto and the said city of Pittsburgh, party of the first part hereto, under the said plans, specifications or terms of this contract, respecting the quality, quantity or value of the work or labor done or materials furnished, or to be done or to be furnished, or any of the terms, stipulations, covenants or agreements herein contained, or respecting any pay for extra work, or respecting any matter pertaining to this contract, or any part of the same, said question shall be referred to the director of the department of public works of the city of Pittsburgh, whose decision thereon shall be final, conclusive and binding upon all parties without exception or appeal, and all right or rights of any action at law or in equity under and by virtue of this contract, and all matters connected with and relative to the same are hereby expressly waived by the party of the second part."

Much that has been said in the discussion of the final estimate provision applies equally to this arbitration clause. Paragraph J is independent of each of the other two cited provisions. That paragraph, complete within itself, and without reference either to an arbitration or an estimate, provides for the peculiar contingency of the city's putting the plaintiff off the work, thereby preventing the plaintiff from proceeding further under the contract and from further benefits thereunder. The director having reached the opinion expressed in his letter of notification to the plaintiff, two alternative courses were open to the city. A dispute had arisen between the

plaintiff and defendant under the contract. The work had undoubtedly been delayed, and the time fixed for its completion was passed. The city's representative, the director, entertained the opinion that the fault of the delay rested with the plaintiff, while the latter contended (and under the proofs, I think, justifiably) that the delay was due to the city's belated furnishment of plans and staking out and to changes by the city in the plans. Now, it is clear to me that the election by the city to proceed under the dismissal clause (J) necessarily excluded and was a substitute for action under the arbitration clause, and this for several reasons. In each course of procedure, the director was to act, but in totally different capacities. As arbitrator, he would act judicially and hear both sides, and the opinion he would reach would be judicial. Under clause J, the opinion of the director might be justifiably arbitrary and purely ex parte. Nothing short of positive bad faith would invalidate it. Moreover, to the extent that the arbitration clause was operative, it was imperative, and just as binding upon the city as upon the plaintiff. But clearly the city was not bound to submit to arbitration the situation which confronted the parties to this contract on April 16, 1900, but had a perfect right to oust the plaintiff under section J, pursuant to the director's opinion. Not being bound to resort to an arbitration clause, which, so far as applicable to a given situation, was imperative, it follows that the city's election to act under clause J was a waiver of any right to arbitration. Furthermore, clause J of itself afforded the city complete protection, and, as we have seen, fixed the principles upon which the balance due the plaintiff was to be ascertained, and implied the determination of the rights of the parties by regular judicial proceedings. Section J does not in terms call for arbitration, and an intention to oust the courts is not to be presumed. Finally, in holding, as we do, that the ascertainment of the balance due the plaintiff under the provisions of section J is within the cognizance of the court in the ordinary course of judicial proceedings, we follow the principles enunciated in the cases of Guaranty Trust Company v. Green Cove Railroad, 139 U. S. 137, 143, 11 Sup. Ct. 512, 35 L. Ed. 116; Mitchell v. Dougherty, 62 U. S. App. 443, 90 Fed. 639, 33 C. C. A. 205.

To the suggestion of the defendant that it was incumbent upon the plaintiff to show what it cost the city to complete the work, in order to fix any balance due the plaintiff, I am unable to assent. There is no presumption of any increased cost. Were there any increase, that was a matter of affirmative defense, and any evidence thereof, moreover, was peculiarly within the knowledge of the city. No evidence on this point was adduced. As to the defense under the liquidated damage clause for delay, I find under the proofs that the city was responsible for that delay, and not the plaintiff.

It is proper to say that the subjoined finding consists of the following items: (1) Retained percentages on work done by the plaintiff, as shown by partial estimates Nos. 1 to 29, inclusive, with interest from April 16, 1900. (2) Work done under contract but not included in above estimate. (3) 459 cubic yards of excess excavation below plane shown on plans. (4) 16,000 cubic yards hand tamping around the influent and effluent chambers, caused by the defendant's

defaults in furnishing plans, and 16,000 cubic yards hand tamping in embankment, caused by the defendant's change of plans whereby the embankment was pushed further out than originally intended.

### Finding of the Court.

And now, May 21, 1906, the court finds in favor of the plaintiff and against the defendant in the sum of $81,341.

### Amendment to Opinion.

And now, to wit, this 8th day of June, 1906, upon motion of counsel for the city of Pittsburgh, and with consent of counsel for Jonathan Clark & Sons Company, it is ordered that the opinion of the court be, and the same is, hereby, amended in respect to the items contained in the finding of the court, so that said items shall read as follows:

(1) Retained percentages on work done by the plaintiff as shown by partial estimates No. 1 to No. 29 inclusive.................$24,879 87
Interest thereon as we compute it, from April 16, 1900 to May 21, 1906 ........................................................ 9,106 03
(2) Amount due and not estimated nor paid by the city to Jonathan Clark & Son in final estimate No. 29.............. 4,201 20
With interest from November 20, 1899, to May 21, 1906.......... 1,638 46
(3) 459 cubic yards of excavation below plane 243.75............ 331 18
With interest from March 20, 1899, to May 21, 1906............. 142 41
(4) 16,000 cu. yds. hand tamping around influent and effluent chambers ...................................................... 12,000 00
With interest from July 20, 1899 to May 21, 1906................ 4,920 00
(5) 16,000 cu. yds. hand tamping in embankment caused by pushing it out three feet further than the original plans.......... 16,000 00
With interest from August 20, 1897 to May 21, 1906............ 8,121 85

Making a total of ..........................................$81,341 00