CITY OF PITTSBURGH v. JONATHAN CLARK & SONS CO.

(Circuit Court of Appeals, Third Circuit. May 29, 1907.)

No. 62.

1. MUNICIPAL CORPORATIONS—PUBLIC WORKS—CONTRACTS—CONSTRUCTION.

A contract for a public work for a city, which contained a clause giving the director of public works of the city the right to stop the work of the contractor at any time if in his opinion it was not being done in accordance with the contract and to complete the work at the contractor's cost, construed, and provisions requiring the contractor to obtain a final certificate from the director of public works of the completion of the work according to the contract before being entitled to final payment, and making such director the final arbiter between the parties in all matters of dispute, *held* not applicable, and not to create conditions precedent to the bringing of an action to recover the contract price, where the director stopped the work of the contractor under the power given him and had the work completed himself.

2. WRIT OF ERROR—MATTERS REVIEWABLE—QUESTIONS NOT PRESENTED TO TRIAL COURT.

In actions at law the function of the Circuit Court of Appeals is exclusively the correction of errors below, and questions which were not presented to nor decided by the trial court are not open for review.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1018–1034.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 146 Fed. 441.

A. M. Thompson, for plaintiff in error.

E. Y. Breck, for defendant in error.

Before GRAY, Circuit Judge, and HOLLAND and LANNING, District Judges.

HOLLAND, District Judge. This is an action arising out of a contract for the construction of a reservoir in the city of Pittsburgh. On the 13th day of May, 1897, Jonathan Clark & Sons Company, a corporation of the state of Illinois, contracted with the city of Pittsburgh to build a reservoir in Highland Park, at an estimated cost price of $420,-000. The cost, however, was not a fixed, but a variable sum, depending upon the amount of work which was actually performed under the plans and specifications. The price per unit of work, however, was fixed and determined by the written contract, which provided, inter alia, that payments should be made from time to time in a certain specified manner, to wit, once a month upon estimates made of the quantities of work performed, of whatever kind, under the contract at unit prices, and that the contractor should receive 85 per cent. of the total amount due upon the monthly estimate, the city retaining 15 per cent. It was further provided that after the completion of the contract a final estimate was to be made which would be conclusive not only as to the prices but also as to the quantities. The director of the department of public works of the city of Pittsburgh was empowered by the parties to make both the monthly and final estimates.

The contract provided that:

"The said party of the second part further agrees that if at any time the director shall be of the opinion that the said work, or any part thereof, is unnecessarily delayed, or that the said contractor is wilfully violating any of the conditions or covenants of this agreement, or is executing the same in bad faith, he shall have the power to notify the contractor to discontinue all work under this contract, or any part thereof, and thereupon the contractor shall cease said work, or such part thereof, and the director shall thereupon have the power to place such and as many persons as he may deem necessary, the same to be employed by contract or otherwise, to work at and complete the work herein described, or any part thereof, and to use such materials as he may find upon the site of said work or to procure other materials for the completion of the same, and to charge the expense of said labor and materials to the aforesaid contractor, and the expense so charged shall be deducted from and paid by the party of the second part out of such moneys as may then be due, or may at any time thereafter become due to the said party of the second part, under and by virtue of this agreement: and in case such expense is less than the sum which would have been payable under this contract, if the same had been satisfactorily completed by the said party of the second part, then, and in that event, the said party of the second part shall be entitled to receive the difference; but in case such expense shall exceed the last said sum, then, and in that event, the said party of the second part, his sureties and heirs and assigns, shall pay the amount of such excess to the party of the first part on notice from said director of the excess due."

The contractor entered upon the execution of the work under the contract, and proceeded therewith until April 16, 1900, when the director of public works, acting on behalf of the city, sent a notice to the contractor that in his (the director's) opinion the work provided for in the contract—

"has been and is unnecessarily delayed, and that you have wilfully violated various of the conditions and .covenants in said contract, and that you have executed the contract in bad faith; and therefore I do hereby exercise the power in me vested and notify you from this date to discontinue all work under said contract. And I hereby notify you that I shall, as authorized by said contract, have completed the work therein described, and that in case the expense of said completion shall exceed the sum which would have been payable under the contract had you faithfully kept and performed the same, I shall require you and your sureties to pay the amount of such excess to the city of Pittsburgh."

After the contractor was thus summarily ejected, at the instance of the city authorities, the Mercantile Trust Company completed the unfinished work. The contractor was not permitted to do any other work upon the reservoir from the date of the receipt of notice from the director, and after the completion of the work by the trust company, on August 9, 1901, the contractor instituted this action in the Circuit Court for the recovery of the retained percentages on the monthly estimates, and for extra work made necessary by reason of a change in plans and specifications. The city, as matter of defense, sets up in bar of the action two provisions of the contract, which may be designated as the final estimate provision and the arbitration clause. The first provided for a final estimate of the work, and the amount due the contractor after the completion of the work, and the second is a stipulation that the director of the department of public works shall be the final arbiter between the parties in all matters of dispute. The case was tried before Judge Acheson without a jury, in accordance with the

provisions of section 649, Rev. St. [U. S. Comp. St. 1901, p. 525]. After the plaintiff below closed its case, the court permitted the defendant to enter a general objection to all the plaintiff's evidence as incompetent and irrelevant, and as insufficient to enable the plaintiff to recover. The court permitted this general objection to be entered, with the understanding that counsel for defendant was subsequently to specify the reasons for the alleged inadmissibility of the evidence and apply to the court for a bill of exceptions. Under this general objection to the admission of all the evidence, the only provisions in the contract which the defendant below urged in bar of the plaintiff's action were the two provisions above referred to, to wit, the final estimate and the arbitration clauses, and the court held that, as the contractor had been put off the work before its completion, the ascertainment of the amount due him was not provided for by either clause, and the evidence was therefore admissible, and judgment was rendered in favor of the contractor. See Jonathan Clark & Sons Co. v. City of Pittsburg (C. C.) 146 Fed. 441.

The court below found as a fact that the items claimed were sufficiently proven by the evidence offered by the plaintiff below, which finding of fact is entitled to the same force and effect as a verdict of a jury; and the court further held, as a matter of law, that the provisions of the final estimate clause contemplated the completion of the work by the original contractor, and that they did not in terms apply to and are inappropriate to the extraordinary contingency of the party being put off the work and being prevented from completing it; in which event (section J of the contract, under which the plaintiff was put off the work) the plaintiff is entitled to recover what is justly due it for its materials and work, subject to specified charges and deductions on account of actual expense incurred by the city; and, further, that, as the city saw fit to act upon its right under clause J to put the plaintiff off the work, the arbitration clause, which provides for the determination of all disputes between the parties to the contract, could not be insisted upon for the ascertainment of the balance due the contractor, as clause J, under which the director was authorized to act and did act, impliedly provides for a determination of the rights of the parties by regular judicial proceedings, section J containing in terms no arbitration clause, and that an intention to oust the courts will not be presumed. The court entered judgment for the plaintiff's claim in the sum of $81,341.

There is ample evidence to sustain the facts found by the court below, and the construction put upon clauses in the contract which were before him upon the issues raised in the Circuit Court, we also think is correct. The errors assigned here, which raise these questions, are therefore overruled. But it is now sought to raise a new question under the contract, which was not brought to the attention of the trial judge nor passed upon by him, to wit, that the claim for extra work, which was allowed as part of the judgment rendered, cannot be sustained, for the reason that the evidence does not show that the clause in the contract providing for the recovery for extra work had been complied with, and therefore that part of the judgment allowed the plaintiff as extra compensation was error. As we have said, this ques-

tion was not called to the attention of the trial judge and was not passed upon by him, but it is urged that it is properly raised under the general objection to the irrelevancy and incompetency of all the evidence offered by the plaintiff. The trial judge, who was hearing the case by submission without a jury in order to save time, and the trouble of specifying objections to each question, permitted a general objection to be entered, giving counsel for the defendant the privilege thereafter to apply to the court for a bill of exceptions. This permission could certainly not have implied that there was to be nothing more than the general objection to the testimony as irrelevant and improper as tending to vary the terms of a written contract, without specifying what terms of the contract the testimony objected to varied, and making it a subject of special bill of exceptions. To permit this to be done would be unfair to the court below, where the testimony was objected to on the one ground and the objection urged in this court for an entirely different one, to which the attention of the court below was not called. This we do not think should be permitted.

The question as to whether the plaintiff had a right to offer evidence in support of a claim for extra compensation without first showing that he had complied with all the requirements of the clause in the contract providing for extra work was never raised before the trial judge by plea or proof or by directing the judge's attention to these provisions of the contract, and no exception was ever taken, and no error was ever assigned, to any ruling upon this point, because it was not passed upon in the court below, and it is therefore not properly before this court. In actions at law the function of this court is exclusively the correction of errors below. Questions which were not presented to or decided by that court are not open for review here, because the trial court cannot be guilty of error in a ruling he never made, upon an issue to which his attention was never called. Board of Com. of Lake County, Colo., v. Sutliff, 97 Fed. 270, 38 C. C. A. 167; Dahl v. Montana Copper Co., 132 U. S. 264, 10 Sup. Ct. 97, 33 L. Ed. 325; Morrison v. Watson, 154 U. S. 111, 14 Sup. Ct. 995, 38 L. Ed. 927; Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811.

The court below having committed no error in its findings of fact and conclusions of law upon the matters of defense to which its attention was called and upon which it passed, we find that the judgment rendered by the court below in favor of the plaintiff should be affirmed, and it is so ordered.